```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT
```

David M. Wambolt,            :
    Petitioner,          :
                         :
    v.                   :        File No. 2:08-CV-250
                         :
Robert Hofmann,              :
    Respondent.          :

## MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION
### (Papers 4, 5 and 8)

Petitioner David Wambolt, proceeding *pro se*, is seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Wambolt was convicted of sexual assault in 2002. In 2007, he filed an unsuccessful state court petition for post-conviction relief claiming that he was innocent. Wambolt filed his § 2254 petition in this Court on November 21, 2008, again claiming innocence.

The respondent has moved to dismiss the petition as untimely. On February 24, 2009, I issued a Report and Recommendation on the motion to dismiss, recommending that the petition be denied. The respondent subsequently moved to clarify a portion of the Report and Recommendation, supplementing the record with additional information about the date of Wambolt's alleged offense. The motion to clarify (Paper 8) is GRANTED, and my Report and Recommendation is amended accordingly.

After amendment, my recommendation is unchanged. For the reasons set forth below, I recommend that the Court GRANT the respondent's motion to dismiss and that Wambolt's § 2254 petition be DISMISSED.

## Factual Background

In September 2002, the State of Vermont charged Wambolt with two counts of sexual assault. Pursuant to a plea agreement, the State agreed to dismiss the second count and Wambolt entered a guilty plea to the first. At the change of plea hearing, the trial court summarized the facts underlying the charge as follows.

> COURT: The affidavit here, Det. Hill's affidavit is extremely lengthy, as I recall from reading it before. Let's see -- The Detective says that he interviewed a witness, Carrie Grant. He said he heard [Wambolt's alleged victim] scream and looked in and saw a naked man on top of her in a sexual act. The next day [the victim] told Carrie Grant that she had been assaulted. Finally [the victim] told police she'd been assaulted. This act apparently occurred sometime in June or July of last year. It's not clear from the affidavit. Is this what happened, you had intercourse with this woman without her consent? Did you have intercourse with [the victim] without her consent?
>
> DEFENDANT: Yes, Your Honor, I did.
>
> COURT: All right. And was that in either June or July of last year?
>
> DEFENDANT: Yes, Your Honor, it was.

2

>       COURT: Okay. I'm going to find an adequate
>    factual basis to the plea based upon the
>    admissions of the defendant.

(Paper 8-2 at 9).

As noted by the trial court, the precise date of the alleged offense was not clear from the supporting documentation. The charging documents stated that both victims were assaulted on July 11, 2002. (Papers 5-3 and 5-4). According to Detective Hill's affidavit, however, the first victim initially informed police that she was assaulted on July 3, 2002. (Paper 8-3 at 1). She later stated that she had been confused, and that the assault had taken place "on the Wednesday before July 3, 2002. (This would make the date of the assault June 26, 2002)." Id. at 2 (parenthetical in original). Hill's affidavit indicates that Wambolt's second victim was allegedly assaulted on July 11, 2002. Id. at 1.

Wambolt was sentenced to serve seven to twelve years all suspended except for six months, with credit for six months of time served. The court further ordered that he be placed on probation, complete sex offender counseling, and comply with the sex offender registry. (Paper 5-2 at 3). The state court docket indicates that the sentence was

imposed on October 31, 2003.  Id.

On April 22, 2004, Wambolt was arrested and held without bail on a charge of violating his probation.  He was subsequently sentenced to serve three years and nine months in prison.  Id. at 4.  He was convicted of violating his probation again in May 2007, and is currently incarcerated. Id. at 5.

On July 18, 2007, he filed a petition for post-conviction relief ("PCR") in state court.  The substance of the petition is not currently before the Court, although it appears from his standard-form filing that he raised claims of constitutional violations and newly discovered evidence. (Paper 5-5).  On September 15, 2008, the Superior Court granted the State's motion for summary judgment and dismissed the petition.  Wambolt filed a notice of appeal. It is not clear from the record whether the appeal has been decided.

Wambolt filed his § 2254 petition on November 21, 2008. He raises seventeen grounds for relief, some of which are repetitive, and most or all of which pertain to the June 26, 2002 and July 3, 2002 dates.  For example, he claims he has a witness who can attest to his whereabouts on July 3, 2002,

and that the State's witnesses with respect to his actions that night were not credible.  He also asserts that the State overstated its case and misled him into believing that his victim had been the subject of a rape kit examination.  Finally, he claims that neither the State nor defense counsel conducted proper investigations.

The respondent now moves to dismiss the petition as untimely.  Specifically, the respondent argues that because Wambolt's conviction became final in 2003, his one-year limitations period expired in 2004.  The respondent also contends that Wambolt's subsequent PCR filing did not toll the already-expired deadline.

## Discussion

The one-year statute of limitations for § 2254 petitions is set forth in the Anti-Terrorism and Effective Death Penalty Act (the "AEDPA"), 28 U.S.C. § 2244(d)(1). The AEDPA's limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>   (C) the date on which the constitutional right
>   asserted was initially recognized by the Supreme
>   Court, if the right has been newly recognized by
>   the Supreme Court and made retroactively
>   applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the
>   claim or claims presented could have been
>   discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under § 2244(d)(1)(A), Wambolt's limitations period expired one year after his conviction became final. Because he never appealed, his conviction became final 30 days after the date of his October 31, 2003 sentencing. See Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002) (AEDPA limitations period began running when petitioner's time for filing an appeal expired); Vt. R. App. P. 4(a). Accordingly, barring any tolling or re-setting of the clock, the limitations period commenced in late 2003 and expired in late 2004.

Wambolt has filed no opposition to the respondent's statute of limitations argument. His § 2254 filing, however, is on a form petition that requires an explanation if the petition is being filed over one year after the state court conviction became final. (Paper 4 at 19). Wambolt responded, in relevant part, as follows:

>   When I was sentenced I was missed led [sic] by my
>   Attorney and was told that if I didn't take this

>plea deal I {would} spen[d] the rest of my life in
>prison. I took this plea deal because I was
>threaten[ed] by the State and I [was] scared . . .
>. I can prove my innocence in this case still. I
>would like the chance to present my case in this
>matter and clear my name for good. I have [a]
>witness for July 3, 2002 still, and I would like
>the chance to clear [my] name of this crime. I
>also have proof that the State knew that [the
>victim] was in jail [on the night in question] . .
>. . I can prove that [there is] no physically
>[sic] and DNA evidence in this case. I [can]
>prove that I didn't [commit] this crime and that
>I'm innocence [sic] too. I have everything in
>black and white.

Id.

Giving Wambolt's petition the required liberal reading, Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001), he appears to be seeking relief based upon newly-discovered evidence. The corresponding question under the AEDPA is whether his limitations period expired one year after his conviction became final, or whether the clock was re-set under § 2244(d)(1)(D) as of the date on which the factual predicates for his claims "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

The Second Circuit has held that "the date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends" on questions that are

7

"appropriately answered by the district court." <u>Wims v. United States</u>, 225 F.3d 186, 190 (2d Cir. 2000). If, however, it "plainly appears from the face of . . . [the] petition and supporting papers" that a petitioner unreasonably delayed in filing the petition, the Court may bar the petition. <u>Id.</u> at 191.

Section 2244(d)(1)(D) applies only to claims for which the factual predicate was not known or reasonably discoverable at the time the petitioner's conviction became final. <u>Shuler v. Spitzer</u>, 2007 WL 1704644, at *5 (E.D.N.Y. June 13, 2007). The limitations period runs from the time a petitioner is on notice of newly discovered facts, and not from the date on which he actually gains possession of evidence to support it. <u>Hector v. Greiner</u>, 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000). "'Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered.'" <u>Carter v. Connell</u>, 2007 WL 1526406, at *3 (N.D.N.Y. May 23, 2007) (quoting <u>Hector</u>, 2000 WL 1240010, at *1 (citations omitted)). Wambolt bears the burden of proving that he could not, with due diligence, have discovered the evidence he now seeks to present in support of his petition. <u>United</u>

States v. White, 972 F.2d 16, 20 (2d Cir. 1992); Carter, 2007 WL 1526406, at *3; Shabazz v. Filion, 2006 WL 2792741, at *5 (N.D.N.Y. Sept. 26, 2006).

Given the nature of the evidence he now seeks to present, Wambolt's filing is clearly time barred. For example, in his first argument for relief, he states that his girlfriend was with him on July 3, 2002, and will provide alibi testimony as to his whereabouts. He also claims that his attorney refused to believe that he was innocent, and failed to call any witnesses. It is plain that each of these assertions could have been brought to the attention of the courts at the time of his guilty plea, and certainly well within the AEDPA limitations period. Indeed, nothing in Wambolt's filings gives any indication why the existence of the girlfriend's testimony, or counsel's alleged ineffectiveness, could not reasonably have been discovered prior to the end of 2004.

Wambolt's remaining arguments are similarly flawed. He claims that the State did not conduct a proper investigation, and that its witnesses at trial were not credible. The credibility argument is based, in part, upon statements that a key witness made to the "reporting

officer." (Paper 4 at 8). Again, this information would have been readily obtainable at the time of the conviction.

Wambolt further claims that one of the reasons he pled guilty was because the prosecution misled him into believing they had evidence from a rape kit examination. He alleges that, since that time, he has contacted Fletcher Allen Hospital and learned that there is no record of a rape kit for his victim on July 3, 2002. While the Court acknowledges that conditions of confinement must be considered when assessing due diligence, see Wims, 225 F.3d at 190-91, it is not clear why this single contact with Fletcher Allen could not have occurred from prison.[1] Moreover, it appears from the record that Wambolt was released on probation for several months after his sentencing, and presumably could have made contact with the hospital during that time. (Paper 5-2 at 4-5).

In sum, "a duly diligent person in petitioner's circumstances" would have discovered the factual predicates underlying Wambolt's claims well before the limitations period expired. Wims, 225 F.3d at 190; see Poindexter v. Nash, 333 F.3d 372, 379 (2d Cir. 2003) ("factual predicates"

---

[1] The Court also questions whether confidentiality laws would permit the hospital to release this information to a non-patient third party.

cited in § 2244 are facts that are "relevant to" and "underlying" the claim). Allegations of prosecutorial misconduct and ineffective assistance of counsel notwithstanding, Wambolt has failed to explain why he delayed four years to challenge his conviction in state court, and five years to bring a petition here.

The respondent contends that tolling is not warranted, since the only potential for tolling was the belated PCR filing in state court. While tolling might have applied if Wambolt had brought his state court PCR petition prior to the end of 2004, the filing of a PCR petition does not re-start the AEDPA limitations period. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 820 (2000). There is, therefore, no need to calculate tolling, and Wambolt's petition is untimely.

In "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. Id.; see also Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). In order to obtain the benefit of equitable tolling, a petitioner must make two showings: (1) he must demonstrate that "extraordinary circumstances prevented him from filing his petition on time"; and (2) he must have "acted with

reasonable diligence throughout the period he seeks to toll." Smith, 208 F.3d at 17. The petitioner bears the burden of showing that he is entitled to equitable tolling. See Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 37 (2d Cir. 2002). In this case, Wambolt failed to demonstrate any extraordinary circumstances that prevented him from filing a timely petition. Consequently, the Court has no cause to consider equitable tolling in this case.

The final question for the Court may be whether Wambolt has asserted a credible claim of actual innocence. The Court will note that within this Circuit, it is an open question whether actual innocence constitutes an exception to the AEDPA's statute of limitations. Alaouie v. Ercole, 2009 WL 289655, at *2 (S.D.N.Y. Feb. 3, 2009) (citing Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000)). Assuming that such an exception exists, however, Wambolt's petition should nonetheless be denied.

In order for him to succeed on an actual innocence claim, Wambolt "must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found [him]

guilty beyond a reasonable doubt.'" Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000) (quoting Schlup v. Delo, 513 U.S. 298, 299 (1995)). Wambolt's actual innocence claim is based almost entirely upon statements by alibi witnesses who were known to him at the time of his guilty plea. Because this evidence existed at the time of his plea, "it is not newly discovered evidence to establish actual innocence in support of equitable tolling." Taylor v. Lantz, 2008 WL 4793726, at *3 (D. Conn. Oct. 28, 2008) (citations omitted).

Furthermore, Wambolt's proposed evidence does not address the question of whether he committed the alleged offense. The petition focuses upon the offense dates set forth in Detective Hill's affidavit, and provides reasons why Wambolt could not have committed crimes at those times. The evidence does not, however, address the facts set forth at the change of plea; namely, that in June or July of 2002 Wambolt committed sexual assault.

The confusion about Wambolt's offense dates may be attributed to his victims, both of whom were apparently of

low intelligence.[2]  In any event, Wambolt admitted his guilt to an offense within a general time period,[3] and has not offered evidence showing "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" Lucidore, 209 F.3d at 114.  I therefore recommend that, assuming actual innocence triggers an exception to the AEDPA limitations period, no such exception be applied in this case.

## Conclusion

The respondent's motion to clarify (Paper 8) is GRANTED.  For the reasons set forth above, I recommend that the respondent's motion to dismiss (Paper 5) also be GRANTED and that Wambolt's petition (Paper 4) be DISMISSED.

Dated at Burlington, in the District of Vermont, this 18th day of March, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Amended Report and Recommendation within 10 days after service by filing with

---

[2] One victim reportedly had an IQ of 72.  When the trial court asked the prosecution about the other victim, counsel replied that "I don't think I have a number, but it's not good." (Paper 8-2 at 3).

[3] The Vermont Supreme Court has stated that "[i]n cases of sexual abuse, time is not an essential element of the offense . . . ." State v. Hicks, 167 Vt. 623, 623 (1998).

the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).